**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION**

| | |
|---|---|
| East Kentucky Power Cooperative, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:22-CV-00063-GVT |
| ) | |
| Kentucky Public Service Commission; ) | |
| Kent A. Chandler, Chairman; ) | |
| Angela C. Hatton, Vice Chairman; and ) | |
| Mary Pat Regan, Commissioner, ) | |
| ) | |
| Defendants. ) | |

**EAST KENTUCKY POWER COOPERATIVE, INC.'S
RESPONSE IN OPPOSITION TO
MOTION TO DISMISS**

Plaintiff East Kentucky Power Cooperative, Inc. ("EKPC") seeks to avoid forcing rural Kentuckians to pay more for electric power than is required under federal law. In its Second Amended Petition [Doc. 19] (the "Petition"), EKPC seeks declaratory and injunctive relief to ensure that (1) the Kentucky Public Service Commission ("Kentucky PSC") properly implements the requirements of the Public Utility Regulatory Policies Act of 1978, as amended ("PURPA"), and (2) Kent A. Chandler, in his official capacity as Chairman of the Kentucky PSC; Angela C. Hatton, in her official capacity as Vice Chairman of the Kentucky PSC; and Mary Pat Regan, in her official capacity as Commissioner of the Kentucky PSC (together with the Kentucky PSC, the "Defendants"), cease violating PURPA, and thereby to ensure that retail customers in rural Kentucky are not subsidizing the development of PURPA qualifying facilities ("QFs"). The Petition is expressly authorized by PURPA Section 210(h)(2)(B), 16 U.S.C. § 824a–3(h)(2)(B).

In their Third Motion to Dismiss [Doc. 22] (the "Motion"), the Defendants make two main arguments: (1) the Court lacks subject-matter jurisdiction over the Petition because it raises "as

applied" claims under PURPA rather than "implementation" claims; and (2) the Petition fails to state a claim upon which relief can be granted because, in the Defendants' view, EKPC is asking the Court to impermissibly engage in utility ratemaking. Alternatively, the Defendants request that the Court dismiss the Petition pursuant to the U.S. Supreme Court's decision in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). All of these arguments fail.

First, the Petition raises an "implementation" claim rather than an "as applied" claim, and is therefore squarely within the Court's jurisdiction. The Petition asserts that the Kentucky PSC's PURPA implementation rules are contrary to the requirements of PURPA (specifically, for example, the requirements that an electric utility not be required to pay more than $0 for electric capacity purchased from QFs when the utility has sufficient electric capacity to meet or exceed its load-serving requirements, and that the price paid to QFs may not exceed market prices when those market prices are an appropriate measure of the electric utility's avoided costs). EKPC does not challenge how the Kentucky PSC applies its rules (which would be an "as applied" claim that should be brought in state court), but, rather, EKPC asserts that the rules themselves are contrary to PURPA. That is unquestionably an "implementation" challenge that is properly brought in federal court.

Second, contrary to the Defendants' assertions, EKPC is not asking the Court to engage in ratemaking. Rather, EKPC is asking the Court to enjoin the Defendants from implementing the requirements of PURPA in a manner that violates PURPA.

Finally, the Defendants fail to demonstrate that the Court should abstain, under the *Burford* doctrine, from considering the Petition. A federal district court must hear the cases brought before it if the court has jurisdiction over the matter presented. *Burford* abstention is a very narrow exception to that rule. *Burford* abstention is not appropriate if the suit primarily involves federal

questions and does not require resolution of state-law issues before the federal issues may be determined. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361-363 (1989) ("*NOPSI*"). As demonstrated below, this case unquestionably involves federal questions, and this Court's review is necessary to ensure that the Defendants' implementation of PURPA conforms to the requirements of federal law.

For these reasons, the Court should deny the Defendants' Motion.

## **Standard of Review**

Defendants' first argument incorrectly contends that the Court lacks subject-matter jurisdiction under Rule 12(b)(1). A Rule 12(b)(1) motion can be one, or both, of two forms: a facial attack and a factual attack. When ruling on a facial attack, the court must presume that factual allegations in the complaint are true, viewed in the light most favorable to the plaintiff, and determine whether they establish subject-matter jurisdiction. *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). By contrast, a Rule 12(b)(1) motion presents a factual attack when the motion is accompanied by supporting evidence that contradicts the jurisdictional allegations in the complaint. *Id.* Here, the Defendants' Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction qualifies as a facial attack because the Defendants claim only that EKPC's Petition fails to state a basis for federal question subject-matter jurisdiction and does not include any supporting evidence to contradict the jurisdictional allegations in the Petition.

In response to a Rule 12(b)(1) facial motion to dismiss, the plaintiff's burden to prove federal question subject-matter jurisdiction is "not onerous." *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)). The plaintiff "must show only that the complaint alleges a claim under federal law, and that the claim is 'substantial.' A federal claim is substantial unless 'prior decisions inescapably render it frivolous.'" *Id.* (quoting *Transcon. Leasing, Inc. v. Mich.*

3

*Nat'l Bank of Detroit*, 738 F.2d 163, 165 (6th Cir. 1984)). "In short," a plaintiff "can survive the motion by showing *any* arguable basis in law for the claim made." *Id.* (emphasis added). Here, the Defendants' facial challenge to the Petition fails, and thus their Rule 12(b)(1) motion should be denied, because, as described below, the Petition raises "implementation" claims under PURPA, a federal statute that expressly permits EKPC to file the Petition in federal district court. The Defendants cite no precedent that would "inescapably render [the Petition] frivolous."

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted should be denied "where a complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must be construed in the light most favorable to the plaintiff. *Herhold v. Green Tree Servicing, LLC*, 608 F. App'x 328, 331 (6th Cir. 2015). Here, the Defendants' Rule 12(b)(6) motion should be denied because EKPC has clearly stated a claim for relief under PURPA: that the Kentucky PSC failed to properly implement PURPA.

<u>Argument</u>

**A.    The Petition Raises "Implementation" Claims Under PURPA.**

The Kentucky PSC's arguments misconstrue the governing case law and mischaracterize the relief sought by EKPC, and as a result do not support dismissal of the Petition.

EKPC has asked the Court to determine whether the Kentucky PSC has properly implemented PURPA, not whether the Kentucky PSC has properly applied its regulations to EKPC. The latter would be an "as applied" claim that would properly be brought in state court to challenge the Kentucky PSC's application of its own duly-adopted rules. In contrast, EKPC's Petition is brought under PURPA Section 201(h)(2)(B) and specifically addresses whether the Kentucky PSC's implementation of PURPA is consistent with the PURPA-implementation

4

regulations of the Federal Energy Regulatory Commission ("FERC"). *See, e.g.*, *Portland Gen. Elec. Co. v. FERC*, 854 F.3d 692, 700 (D.C. Cir. 2017) (Section 201(h)(2)(B) "allows private parties to petition FERC to initiate [enforcement actions against state commissions that fail to implement FERC's PURPA rules], and, should FERC decline to do so, permits those parties to sue the state utility commission in federal district court"); *Exelon Wind I, LLC v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014) ("Federal courts have exclusive jurisdiction over implementation challenges, while state courts have exclusive jurisdiction over as-applied challenges.").

The Defendants assert that the Petition should be dismissed under Rule 12(b)(1) because it raises "as applied" claims that should be brought in state court. Motion at 10. The Defendants argue that the Petition raises only "as applied" claims because EKPC's "challenge . . . applies solely to EKPC." *Id.* at 11. In the Defendants' view, "EKPC has not, and cannot, prove that the relief that it seeks applies to any other utility in Kentucky other than itself." *Id.* at 12. In support, the Defendants argue that EKPC is the only Kentucky PSC-jurisdictional utility that participates in the Base Residual Auction in PJM, that EKPC's claims depend on a Kentucky PSC factual determination of need for electric capacity and how it is procured, and that the relief sought by EKPC will allow EKPC instead of the Kentucky PSC to determine when and if EKPC has excess capacity. *Id.*

The Defendants rely in part upon *Exelon Wind I*, 766 F.3d 380, as the basis for their "as applied" argument. *Id.* at 11-12. But *Exelon Wind I* does not support the outcome that the Defendants seek. Only some of the claims raised in *Exelon Wind I* were dismissed as "as applied" challenges. Those claims challenged the application, via a state public service commission order, of the state commission's regulations. As the Fifth Circuit explained: "The PUC Order is best viewed as an application of PUC Rule 25.242 – which the PUC promulgated more than thirty years

5

ago – to an individual petitioner. As a result, [the utility petitioner's] challenges to the PUC Order are as-applied challenges." 766 F.3d at 391 (footnote omitted). Here, in contrast, EKPC challenges the Kentucky PSC's rule itself as being non-compliant with PURPA. The Defendants latch on to the "individual petitioner" language in *Exelon Wind I*, but it was the challenged application of the state commission's regulations that determined the outcome, not the number of affected petitioners.

Meanwhile, the Defendants overlook the portion of *Exelon Wind I* that involved an "implementation" claim. Specifically, in *Exelon Wind I* the petitioner had also "request[ed] that the [federal district] court issue an injunction requiring the [state commission] to fully implement FERC's regulations." 766 F.3d at 393. The Fifth Circuit determined that that was an "implementation" challenge properly brought in federal district court under PURPA Section 210(h)(2)(B). 766 F.3d at 393. *See also Power Resource Grp., Inc. v. Pub. Util. Comm'n of Tex.*, 422 F.3d 231, 236-39 (5th Cir. 2005) (evaluating challenge to state public service commission PURPA rule as "implementation," not "as applied," challenge).

The Defendants also mischaracterize the relief sought by EKPC. They claim that EKPC's Petition would usurp ratemaking authority from the state to the courts or a utility, and that Kentucky has not "relinquished its role" in determining a utility's load requirements. Motion at 13, 15. The Defendants claim that under the Kentucky PSC's rules and regulations, whether a utility pays $0 for QF capacity is a factual issue that is unique to each utility, but that "EKPC does not want to go through the process of making such a showing." *Id.* at 14. The Defendants state that the Kentucky PSC's Order in Kentucky PSC Case No. 8566 already sets out the Kentucky PSC's implementation of PURPA's requirements and explains the sequential steps for determining the rate for avoided capacity. *Id.* at 16. The Defendants claim that EKPC "seeks an order from this

6

Court to mandate the [Kentucky] PSC create a regulation specific to EKPC's preferred end result." *Id.*

This is not what EKPC's is seeking at all. Instead, EKPC has challenged the Kentucky PSC's rules and orders that would require EKPC to pay to QFs more than EKPC's incremental cost of electric capacity that it would generate or purchase. EKPC's Petition asserts that these rules and orders are therefore contrary to PURPA's mandate and FERC's implementation regulations. The relief that EKPC seeks is to align the relevant Kentucky PSC PURPA implementation rules and orders with PURPA itself.

Under the Defendants' logic, so long as EKPC remains the sole state-jurisdictional utility that participates in the PJM capacity markets, EKPC would *never* be able to bring an "implementation" challenge to the Kentucky PSC's implementation of PURPA in federal court. But nothing in PURPA divests an electric utility of its right to challenge its public service commission's PURPA rules just because the utility is rate regulated and participates in the regional capacity markets, even if it is the only utility in the state to do so. And Congress, FERC, and the courts have made clear that a challenge to a state's implementation of PURPA *must* be brought in federal court. How the state applies its PURPA implementation rules under PURPA must be brought in state court. An "implementation" challenge asserts that the state commission's rules are wrong, i.e., violate PURPA; an "as applied" challenge says that those rules were applied incorrectly. EKPC's challenge plainly falls into the former category, and therefore is properly before this Court.

The Defendants' discussion of the determination of need for electric capacity is a strawman. EKPC's claims here do not challenge how the determination of the need for capacity is made. Rather, EKPC's claims assume that there is excess capacity on the utility system, i.e., no

7

need for capacity. *See, e.g.*, Petition at 16 (seeking declaratory judgment under PURPA Section 210(a) that, "when an electric utility has electric capacity, whether owned and/or contracted for, in an amount that meets or exceeds its load requirements, the utility may not be required to pay more than $0 for electric capacity purchased from QFs"). Contrary to the Defendants' claims, EKPC is not inviting the Court to determine whether and when EKPC has excess capacity, or to supplant whatever authority the Kentucky PSC has over the determination of whether a utility has excess capacity. The scope of that authority is not discussed or addressed in the Petition. Instead, EKPC is asking the Court to enforce the requirement under PURPA that a utility is not required to pay more than $0 for QF capacity when the utility has excess capacity. *See* Petition at 8-10 (summarizing FERC rules implementing PURPA). Such an enforcement action is contemplated by PURPA Section 210(h).

The Court should deny the Defendants' Rule 12(b)(1) motion, just like the District Court did in *Occidental Chemical Corp. v. Louisiana Public Service Commission*, 494 F. Supp. 2d 401, 408-09 (M.D. La. 2007), where "the plaintiffs' claims against the [Louisiana PSC] are claims under § 210(h) of PURPA – namely claims that seek to require the [Louisiana PSC] (a state regulatory authority under the Federal Power Act) to comply with PURPA's requirements and the FERC's regulations."[1] EKPC plainly has brought an enforcement action under PURPA Section 210(h). As a result, EKPC easily overcomes the Defendants' Rule 12(b)(1) facial motion to dismiss based on lack of subject-matter jurisdiction. For the foregoing reasons, the Defendants' Motion should be denied as to their Rule 12(b)(1) argument.

---

[1] In *Occidental*, the plaintiffs alleged that the state public service commission's PURPA rules resulted in QF purchase rates that were less than the utility's avoided costs. *Occidental*, 494 F. Supp. 2d at 407. In contrast, here, EKPC alleges that the Kentucky PSC's rules and orders result in rates that *exceed* its avoided costs. In both cases, the complaint properly sought federal district court review of a state public service commission's avoided cost rules pursuant to PURPA Section 210(h).

### B.     The Relief Requested in the Petition Is Authorized by PURPA.

Construing the Petition in the light most favorable to EKPC, the Kentucky PSC's Rule 12(b)(6) motion to dismiss for failure to state a claim must be denied because EKPC has alleged claims that are "plausible on [their] face."

As with its claim that EKPC's Petition is an "as applied" challenge, the Defendants again rely on the strawman argument that EKPC is asking the Court to determine whether and when EKPC has a need for electric capacity and to determine the "particular" ratemaking methodology to be used in determining EKPC's avoided costs. *See* Motion at 18 ("In short, because PURPA does not impose a particular methodology be used in calculating 'avoided costs,' PURPA does not empower the Court to impose such a mandate. EKPC's request that the Court do so, therefore, states a claim upon which no relief may be based."). The Defendants assert that "[s]etting avoided capacity rates based upon incremental auctions would render this mandate [that QFs be "given the option to receive avoided capacity costs at fixed rates"] untenable to QFs." *Id.* at 18. But the Defendants never explain why pricing at the incremental auction rate would be "untenable to QFs," much less how it would run afoul of PURPA's dictate that QF pricing not exceed the cost to the utility of purchasing power.

Contrary to the Defendants' claims (*id.* at 18-19), EKPC's Petition did not question the Kentucky PSC's jurisdiction over the generation decisions of the utilities within its jurisdiction. Nor has EKPC requested, as the Defendants assert (*id.*), that "the Court endeavor into ratemaking by mandating the [Kentucky] PSC adopt EKPC's preferred methodology of calculating avoided costs." Instead, EKPC has challenged the Kentucky PSC's rules that would require EKPC to pay to QFs more than EKPC's incremental cost of electric capacity that it would generate or purchase, contrary to PURPA's mandate and FERC's implementation regulations. Nothing in the relief requested by EKPC would disturb the Kentucky PSC's jurisdiction or constitute "ratemaking"; it

9

would simply bring the Kentucky PSC's implementation of PURPA in line with the requirements of the federal statute and FERC's regulations. PURPA reserves to the federal courts a complaint seeking that type of relief. 16 U.S.C. § 824a–3(h)(2)(B).

The fundamental problem with the Defendants' Motion is captured in the concluding paragraph of their Rule 12(b)(6) argument: "Should EKPC believe the [Kentucky] PSC determines the utility's avoided costs and QF purchase rates at amounts contrary to PURPA, their relief sits with Franklin Circuit Court, not here." Motion at 20. In fact, if a state public service commission has improperly implemented PURPA, PURPA Section 210(h)(2)(B) specifically authorizes a utility to challenge that improper implementation in federal district court. That is what EKPC has done in this case. *See, e.g.*, Petition at 11 ("The Kentucky PSC's PURPA implementation regulations do not limit the price that a purchasing electric utility must pay to a QF to no more than the utility's avoided cost, nor do the Kentucky PSC's PURPA implementation regulations limit the utility's avoided capacity price to $0 when the utility does not need any capacity."). *See also id.* at 14-15 ("EKPC has been aggrieved by the Defendants' failure to implement the requirements of PURPA because the Kentucky PSC's PURPA implementation regulations and its orders, and Defendants Chandler, Hatton, and Regan voting and taking such actions requiring compliance with those regulations and orders, would require EKPC to pay a price greater than $0 for electric capacity purchased from QFs when EKPC has no need for such capacity."); *id.* at 15 (seeking declaratory judgment that, under PURPA, EKPC may not be required to pay more than $0 for electric capacity purchased from QFs when EKPC has capacity that meets or exceeds its load; that, under PURPA, an electric utility's avoided cost rate may be determined by reference to capacity that is or will be purchased; and that, under PURPA, the market-clearing price in an organized market auction may be an appropriate measure of the utility's avoided cost).

Stating clearly the relief sought by EKPC in its Petition reveals the hyperbole and mischaracterizations in the Defendants' Motion. EKPC's Petition stays within the bounds of what an electric utility may lawfully seek from a federal district court under PURPA Section 210(h)(2)(B). Accordingly, the Motion should be denied as to Defendants' Rule 12(b)(6) argument.

   **C.** ***Burford* Abstention Is Inappropriate Where PURPA Explicitly Permits EKPC to Bring the Petition in Federal District Court.**

The Defendants "suggest" that, if the Court is not persuaded by their two Rule 12(b) arguments, "the *Burford* Doctrine counsels in favor of the Court abstaining from ruling on and dismissing EKPC's [Petition] in this case as the underlying question involves state agency application of state law and regulations." Motion at 20. The Defendants' introduction of their *Burford* doctrine argument demonstrates precisely why that argument fails. The Defendants quote *NOPSI* for the proposition that "[w]here timely and adequate state-court review is available," then the federal district court should stay its hand. Motion at 20 (quoting *NOPSI*, 491 U.S. at 361). But the available state-court review here is for an "as applied" claim, not an "implementation" challenge like EKPC's, which is specifically authorized under PURPA. Far from being "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," *NOPSI*, 491 U.S. at 361, EKPC's complaint is necessary to ensure that state policies, as adopted by the Defendants, align with federal law (PURPA). The Defendants' attempt to prevent EKPC from appropriately litigating this matter in federal court should thus be denied.

To justify *Burford* abstention here, the Defendants point to the proceeding pending before the Kentucky PSC in which EKPC has filed tariff sheets proposing QF purchase rates. Motion at 20. The Defendants note that EKPC proposes in that proceeding that QF capacity rates be set to $0, and that "EKPC's proposed QF rate could be directly affected by EKPC's requested

11

declaratory relief from this Court." *Id.* at 21. The Defendants state that "[t]he practical effect of the Court granting EKPC's relief is that the Court would not only prejudge an issue that is currently before the [Kentucky] PSC . . . [but also] would strip the [Kentucky] PSC of its ability to make the obvious inquiry of whether the owned or contracted generation of any utility participating in an RTO is sufficient to meet, among other things, the capacity and reliability necessary to provide adequate, efficient and reasonable service in Kentucky." *Id.* at 21-22.

But EKPC is not requesting that the Court interfere with the Kentucky PSC's "obvious inquiry" of decisions on generation (*id.* at 22). Rather, EKPC requests that the Court review whether the Kentucky PSC's avoided cost rate rules and orders align with PURPA; more specifically, EKPC has challenged the Kentucky PSC's rules and orders that would require EKPC to pay to QFs more than EKPC's incremental cost of electric capacity that it would generate or purchase.

In supporting their *Burford* doctrine argument, the Defendants rely principally upon two cases. But both decisions are easily distinguishable from this case. First, the Defendants cite the 1908 U.S. Supreme Court decision *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210 (1908), which they claim "found abstention by a federal court in a Virginia railroad ratemaking proceeding appropriate because Virginia had provided for legislative review of commission rates by appeal to state courts." Motion at 23. Here, in contrast, federal law (PURPA) specifically provides for judicial review in federal district court of a state public service commission's implementation of that federal law. That is precisely the challenge raised by EKPC in the Petition. EKPC is not seeking review of the Kentucky PSC's application of its rules and orders, which is reserved for the state appellate courts. Instead, EKPC has asserted that those rules and orders do not faithfully implement PURPA. If EKPC is correct, then the Kentucky PSC's rules and orders would have to

12

be changed to conform to the requirements of PURPA. And ultimately, that could have an impact on the pending Kentucky PSC proceeding in which the Kentucky PSC is reviewing EKPC's proposed QF capacity rates. But that is because the rules and orders would change, not because this Court will have impermissibly interfered with the Kentucky PSC's application of its PURPA rules and orders.

The Defendants also rely upon *Coalition for Health Concern v. LWD, Inc.*, 60 F.3d 1188, 1189 (6th Cir. 1995). Despite the Defendants' claim that "EKPC's position in this case is indistinguishable" from the plaintiff's position in *Coalition for Health Concern* (Motion at 24), that decision also is inapplicable here. In *Coalition for Health Concern*, the Sixth Circuit concluded that abstention was proper where state law provided an adequate review process for the complaint and the exercise of federal jurisdiction would have disrupted state efforts to establish policy with respect to the licensing of hazardous waste facilities. *Coalition for Health Concern*, 60 F.3d at 1195. Here, the Petition raises "implementation" claims under PURPA, a federal statute that expressly permits EKPC to file the Petition in federal district court to ensure that the Kentucky PSC's rules and orders properly implement PURPA, including the requirement that electric utilities not pay more than their incremental costs for QF power. Such an express right overrides the Defendants' *Burford* abstention arguments.[2]

A federal court has a "virtually unflagging obligation" to exercise its jurisdiction. *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976). Abstention under *Burford*

---

[2] The federal district court in *Occidental* also rejected the state public service commission's request for *Burford* abstention with respect to the QFs' PURPA claims in that case because "[n]either [QF's] PURPA . . . claims [i.e., challenging the state public service commission's avoided cost rate methodology] involve state law. . . . § 210(f) of PURPA permits the plaintiffs to seek enforcement of PURPA and FERC regulations against the [Louisiana PSC] in federal district court. By statute, Congress has mandated that PURPA claims under § 210(h) (implementation claims as opposed to § 210(g) as-applied claims) are to be brought in *federal* court." *Occidental*, 494 F. Supp. 2d at 412 (emphasis in original).

13

is appropriate when difficult questions of state law are at issue, or when federal adjudication would disrupt state efforts to settle state law. *NOPSI*, 391 U.S. at 361. "But *Burford* 'does not require abstention whenever there exists [a complex state administrative] process, or even in all cases where there is a potential for conflict with state regulatory law or policy.'" *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 423 (6th Cir. 2007) (quoting *NOPSI*, 391 U.S. at 362). Rather, "[t]his balance only ***rarely favors abstention***, and the power to dismiss recognized in *Burford* represents ***an extraordinary and narrow exception*** to the duty of the District Court to adjudicate a controversy properly before it." *Adrian Energy Assocs.*, 481 F.3d at 423 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (quotation in original omitted; emphasis added)).

"Because *Burford* abstention is concerned with potential disruption of a state administrative scheme, rather than the mere existence of such a scheme," a court "must look behind the action to determine whether it implicates the concerns raised in *Burford*." *Adrian Energy Assocs.*, 481 F.3d at 423-24. When "look[ing] behind the action" in this case, no *Burford* concerns warranting abstention are implicated. The Petition seeks to ensure that the implementation of federal law by a state agency conforms to federal law. The outcome of this case may have an impact on the pending Kentucky PSC proceedings on EKPC's PURPA tariff, if revisions to the Kentucky PSC's rules and orders are required so that they conform to federal law. In that regard, "clear guidance from this Court on PURPA's requirement may actually accelerate and add to [the Kentucky PSC's] efforts." *sPower Dev. Co., LLC v. Colo. Pub. Util. Comm'n*, No. 17-cv-683-CMA-NYW, 2018 U.S. Dist. LEXIS 237486, at *29 (D. Colo. June 18, 2018). *See also NOPSI*, 491 U.S. at 362 (a federal court's inquiry into a rate order "may, of course, result in an injunction against enforcement of the rate order, but 'there is . . . no doctrine requiring abstention merely

because resolution of a federal question may result in the overturning of a state policy'") (quoting *Zablocki v. Redhail*, 434 U.S. 374, 380, n.5 (1978)). But that outcome does not raise "difficult questions of state law" or disrupt "state efforts to establish a coherent policy." *Adrian Energy Assocs.*, 481 F.3d at 423 (quoting *NOPSI*, 491 U.S. at 361). Rather, it turns on interpretation of federal law, and is squarely within this Court's province. While a federal district court's disposition of a case may affect, or even pre-empt, a pending state court action, "there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts." *NOPSI*, 491 U.S. at 372. The Court can thus proceed with this case without concern that the federal claims are "in any way entangled in a skein of state law that must be untangled before the federal case can proceed." *McNeese v. Board of Education*, 373 U.S. 668, 674 (1963).

*Adrian Energy Associates* provides an example of when *Burford* abstention ***is*** appropriate. There, in granting *Burford* abstention, the Sixth Circuit focused on the Michigan Public Service Commission's ability to regulate rates to consumers. *See Adrian Energy Assocs.*, 481 F.3d at 424 ("Federal court intervention in this case would interfere with the Michigan Public Service Commission's efforts to ensure that utility customers are charged appropriate and accurate rates . . . ."). The Sixth Circuit was also cognizant that "the state of Michigan has determined that rate orders of the Michigan Public Service Commission are to be appealed to the Michigan Court of Appeals." *Id.* In the Sixth Circuit's view, "federal [judicial] review . . . would be disruptive of Michigan's efforts to establish a coherent policy with respect to regulation of qualifying facilities, particularly as the Michigan Public Service Commission and state courts have or are reviewing the precise issue raised by plaintiffs under a legislatively-approved scheme." *Id.*[3] This case is

---

[3] Although the Sixth Circuit found in favor of abstention under *Burford*, it remanded the case to the district court to enter a stay, rather than dismiss the lawsuit, until the conclusion of the state proceedings. *Adrian Energy Assocs.*, 481 F.3d at 425.

strikingly different. Here, the challenge is not to the Kentucky PSC's rate orders, but to its rules and orders implementing federal law (PURPA). PURPA requires that such challenges be heard in federal district court.

Finally, the Defendants suggest that EKPC bring in state court an "as applied" challenge to the Kentucky PSC's eventual order in EKPC's pending PURPA tariff case. Motion at 24-25. But the case before the Court is an "implementation" challenge that properly belongs in federal district court. Where, as here, a petitioner raises an "implementation" challenge, PURPA explicitly permits the petitioner to bring its action in federal district court. EKPC's ability to appeal to the state appellate courts a later order from the Kentucky PSC that applies its PURPA rules is beyond the scope of this case.[4]

For these reasons, abstention under *Burford* is inappropriate, and the Defendants' motion to dismiss on *Burford* abstention grounds should be denied.

---

[4] The Defendants also seem to suggest that EKPC could bring an "implementation" challenge in state court. *See* Motion at 25 ("Therefore, EKPC is entitled to raise any alleged PSC violation of PURPA in setting QF rates in Franklin Circuit Court. Should the circuit court conclude that the PSC did violate PURPA it can vacate the PSC order and remand to the PSC. KRS 278.450. Thus, EKPC is protected from any alleged PSC violation of PURPA."). An alleged violation of PURPA (and not of a Kentucky PSC order) is an "implementation" challenge that must be brought in federal district court. 16 U.S.C. § 824a–3(h)(2)(B).

**Conclusion**

For the reasons stated above, Plaintiff East Kentucky Power Cooperative, Inc. respectfully requests that the Court deny the Defendants' Third Motion to Dismiss.

                                                            Respectfully submitted,

*/s/ Medrith Lee Norman*
Medrith Lee Norman
Frost Brown Todd LLC
Lexington Financial Center
250 West Main Street, Suite 2800
Lexington, KY 40507-1749
Tel.: 859-244-3209
Fax: 859-231-0011
Email: mnorman@fbtlaw.com

Daniel E. Frank
Eversheds Sutherland (US) LLP
700 Sixth St., N.W., Suite 700
Washington, DC 20001-3980
Tel.: 202-383-0838
Fax: 202-637-3593
Email: DanielFrank@eversheds-sutherland.com
(Admitted Pro Hac Vice)

*Counsel for*
*East Kentucky Power Cooperative, Inc.*

Dated: October 17, 2023

**Certificate of Service**

    I hereby certify that a true and correct copy of the foregoing has been electronically filed with the Court's CM/ECF system on October 17, 2023, which will provide notice to all counsel of record registered to receive electronic filing notification.

                                                */s/ Medrith Lee Norman*
                                                Medrith Lee Norman
                                                *Counsel for East Kentucky Power Cooperative, Inc.*