UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

EAST KENTUCKY POWER )
COOPERATIVE, INC., )
)        Civil No. 3:22-cv-00063-GFVT
         Plaintiff, )
)
v. )        **MEMORANDUM OPINION**
)        **&**
KENTUCKY PUBLIC SERVICE )        **ORDER**
COMMISSION, *et al.*, )
)
         Defendants. )

*** *** *** ***

This matter is before the Court upon the Defendants' Third Motion to Dismiss.  [R. 22.]
The Defendants aver that this case does not belong in federal court.  The Court disagrees.
Plaintiff East Kentucky Power Cooperative, Inc. has plausibly alleged a type of action that
entitles it to seek relief in the federal forum.  Thus, for the reasons that follow, the Defendants'
motion will be **DENIED**.

**I**

Plaintiff East Kentucky Power Cooperative, Inc. is a not-for-profit, member-owned
cooperative that provides energy to its 16 member-owner distribution cooperatives.
[R. 19 at 3.]  Those 16 member-owners, in turn, distribute power to residences and businesses in
87 Kentucky counties.  *Id*.  Given its line of business, East Kentucky Power is regulated by the
Federal Energy Regulatory Commission ("FERC").

In 1978, Congress passed the Public Utility Regulatory Policies Act ("the Act").  Section
210 of the Act, which is central to this case, "seeks to lessen the United States' reliance on oil

and natural gas by encouraging the development of energy-efficient cogeneration and small power production facilities." *Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 67 (1st Cir. 2017).  Section 210(a) of the Act directed the FERC to promulgate rules mandating that electric utilities purchase energy from certain categories of production facilities known as Qualifying Facilities[1] or "QFs". 16 U.S.C. § 824a-3(a).  Section 210(b) specifies that the FERC's rules are not to "provide for a rate which exceeds the incremental cost to the electric utility of alternative electric energy." *Id*. § 824a-3(b).

The "incremental cost" is "the cost to the electric utility of the electric energy which, but for the purchase from such cogenerator or small power producer, such utility would generate or purchase from another source." *Id*. § 824a-3(d).  In accordance with Section 210(b)'s directive, the FERC promulgated regulations requiring utilities to purchase electricity from QFs "at a rate equal to the utility's full avoided cost." *Allco Renewable Energy, Ltd.*, 875 F.3d at 67; *see also* 18 C.F.R. 292.304(b)(2)).  "Given section 210's purpose, the avoided cost rate usually exceeds the market price for wholesale power." *Allco Renewable Energy, Ltd.*, 875 F.3d at 67. Importantly, section 210(f) of the Act instructs state regulatory authorities to implement these FERC rules.  16 U.S.C. § 824a-3(f)(1).

Defendant Kentucky Public Service Commission ("PSC") is the Commonwealth's regulatory authority tasked with implementing the Act's requirements.  According to East Kentucky Power, the PSC's implementation regulations do not limit the price that a purchasing electric utility must pay to a QF to no more than the utility's avoided cost.  [R. 19 at 11.]  Nor do the PSC's implementation regulations limit the utility's avoided capacity price to $0 when the

---

[1]  QFs are comprised to two categories of producers:  (1) qualifying small power production facilities and (2) qualifying cogeneration facilities.

2

utility does not need any capacity, as East Kentucky Power alleges should be the case. *Id*.

Section 210(h)(2)(B) of the Act permits an electric utility, such as East Kentucky Power, to petition FERC to initiate an enforcement action against a state regulatory authority for the state regulatory authority's failure to properly implement FERC's regulations on determining avoided costs. East Kentucky Power requested that FERC initiate an enforcement action against the PSC, but the FERC declined to initiate such an enforcement action. *Id*. at 14. Hence, East Kentucky Power now turns to this Court seeking relief. East Kentucky Power has named the PSC, Chairman Kent Chandler, Vice-Chairman Angela Hatton, and Commissioner Mary Regan as Defendants. The Defendants have moved for the third time to dismiss East Kentucky Power's action. The Court turns now the Defendants' most recent motion.

## II

The PSC brings its motion to dismiss under both Rule 12(b)(1) and 12(b)(6). There exists a distinction between 12(b)(1) and 12(b)(6)—the lens through which the Court peers when considering a motion to dismiss is not the same. Thus, a brief explanation of what each rule requires is appropriate.

Rule 12(b)(1) motions assert that the federal court lacks subject matter jurisdiction over the case. In other words, it directly attacks the Court's power to hear the case at all. 12(b)(1) motions "come in two varieties: a facial attack or a factual attack." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016) (citation omitted). A facial attack questions the sufficiency of the pleading. *Id*. "When reviewing a facial attack, a district court takes the allegations in the complaint as true." *Gentek Bldg. Prods. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007). The approach is identical to that employed when reviewing a motion to

dismiss pursuant to 12(b)(6).  *Global Tech., Inc. v. Yubei (Xinxiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015).  Essentially, the Court considers whether the plaintiff's allegations provide a sufficient factual basis establishing subject matter jurisdiction.  "If the allegations in the Complaint establish federal claims, the exercise of subject-matter jurisdiction is proper."  *Rote*, 816 F.3d at 387.

In contrast, a factual attack raises a factual controversy.  "Where … there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations."  *Gentek Bldg. Prods.*, 491 F.3d at 330.  A factual attack requires the Court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.  In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts."  *Id.* (citations omitted).

Here, the PSC's motion presents a facial attack because the motion attacks jurisdiction on the basis of the pleading alone.  In other words, the PSC does not appear to attack East Kentucky Power's factual predicate.  [*See* R. 22.]  Rather, the PSC contends that this Court lacks jurisdiction because the PSC's allegations constitute "as-applied" claims, which are required by the Act to be adjudicated in state court.  Because the PSC's challenge to subject-matter jurisdiction is a facial attack, analyzing East Kentucky Power's complaint under the more familiar 12(b)(6) framework is appropriate.

Whereas 12(b)(1) requires the Court to consider whether the alleged facts support subject-matter jurisdiction, Rule 12(b)(6) requires the Court to look at whether the alleged facts support a plausible claim for relief.  To survive a motion to dismiss under Rule 12(b)(6), a

4

complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of cause of action will not do." *Id.*

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).  The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).  The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim.  *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

### A

The PSC's primary argument, as alluded to above, is jurisdictional.  "Sections 210(g)-(h) of [the Act] create an overlapping scheme of federal and state judicial review of state regulatory action taken pursuant to [the Act]."  *Allco Renewable Energy, Ltd.*, 875 F.3d at 67.  Section 210(f) requires state public utility commissions and nonregulated independent utilities to

"implement" the rules issued by FERC. *Vote Solar v. City of Farmington*, 2 F.4th 1285, 1287-88 (10th Cir. 2021). If the state public utility commissions or nonregulated independent utilities fail to implement FERC's rules, an enforcement action may be brought via one of two ways. *Id*. at 1288. Section 210(g) of the Act provides state courts jurisdiction to consider challenges to "any proceeding conducted by a [utility] for purposes of implementing any requirement of a rule under [Section 210(a)]." *Id*. Alternatively, Section 210(h) permits small power producers to petition FERC to enforce a state public utility commission's or nonregulated independent utility's obligation to implement FERC's rules. *Id*. If FERC declines to proceed with an enforcement action, the small power producer may bring suit in federal district court. *Id*.

The Act's jurisdictional scheme just described is somewhat of a legal quagmire. The judiciary's understanding of the Act's enforcement framework has evolved into a distinction between "as-applied" challenges and "implementation" challenges. *See Vote Solar*, 2 F.4th at 1288-91; *Allco Renewable Energy, Ltd.*, 875 F.3d at 67-68; *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014); *Power Res. Grp., Inc., v. Pub. Util. Comm'n of Tex.*, 422 F.3d 231, 234-35 (5th Cir. 2005). This distinction between an "as-applied" and "implementation" claim is critical because federal courts have exclusive jurisdiction over implementation challenges, while state courts have exclusive jurisdiction over as-applied challenges. *Exelon Wind 1*, 766 F.3d at 388. "Implementation challenges involve claims that a state agency has failed to properly implement FERC's regulations governing the purchase of energy from QFs." *Allco Renewable Energy, Ltd.*, 875 F.3d at 68. As-applied challenges, in contrast, involve a contention that the state agency's implementation plan is unlawful, as it applies to or affects an individual petitioner. *Exelon Wind 1*, 766 F.3d at 388.

6

Put more simply, the Court's task here is to determine whether East Kentucky Power's complaint is an "as-applied" challenge or an "implementation" challenge. If East Kentucky Power's challenge is one concerning the PSC's implementation of FERC's rules, then this Court has jurisdiction. If East Kentucky Power's challenge is "as-applied," then the action belongs in state-court. Of course, the Court would be remiss in failing to note that the Sixth Circuit has never been afforded the opportunity to consider Section 210's enforcement framework. Nonetheless, the Court finds that the prevailing view of four distinct appellate courts presents a navigable roadmap worth following. Thus, the Court will proceed pursuant to the framework set out above.

The PSC contends that although East Kentucky Power labels its action as an implementation challenge, East Kentucky Power's complaint actually consists of as-applied claims. The PSC argues that East Kentucky Power's petition is an as-applied challenge because the petition applies only to East Kentucky Power—in other words, the relief sought would not be afforded to any other utilities besides East Kentucky Power. The PSC's motion asserts that the PSC's regulations and orders are "consistent with [the Act]," and that the PSC's implementation of [the Act] does not require, as a rule, that a utility pay more than $0 for QF capacity when the utility has excess capacity." [R. 22 at 13.] And while the PSC's motion does not necessarily attack East Kentucky Power's factual predicate, the PSC does argue that East Kentucky Power "has provided no evidence that the PSC's orders or regulations violate [the Act] . . . and alleges that the PSC's rules and regulations violate [the Act] with no supporting evidence or facts." [R. 22 at 10.]

East Kentucky Power counters by arguing that, because the rules and orders promulgated by the PSC are "contrary to [the Act's] mandate and FERC's implementation regulations", its complaint is an implementation challenge rather than as applied. [R. 23 at 7.] In other words, the relief that East Kentucky Power seeks "is to align the relevant Kentucky PSC … implementation rules and orders with [the Act] itself." *Id*.

The disagreement between the parties can be summarily described as follows:  the PSC argues that East Kentucky Power is seeking relief for a PSC action that East Kentucky Power disagrees with, thus the challenge is as-applied;  East Kentucky Power says no, what we are claiming is that the PSC's decision is a failure to properly implement FERC's rules.  After extensive review of the briefing and relevant case law, the Court concludes that East Kentucky Power has successfully met its burden to establish jurisdiction at this stage of the litigation.

As always, it is important to keep in mind the standard by which the Court considers matters at the motion to dismiss stage.  Here, because the PSC's jurisdictional challenge is a facial one, the Court's task is to simply determine whether the facts alleged by East Kentucky Power plausibly support federal jurisdiction.  In other words, are the facts alleged, taken as true, consistent with an implementation challenge.  The Court finds that they are.

Upon review of East Kentucky Power's complaint, it is apparent that East Kentucky Power's frustration is not with the process of the PSC's administrative proceedings.  Although East Kentucky Power disagrees with the PSC's outcome, East Kentucky Power believes that the PSC's disposition is a clear failure to implement FERC's avoided cost regulation.  Thus, East Kentucky Power is asking this Court to require the PSC to adjust the PSC's regulations and orders so that they are consistent with the Act.  The Court is acutely aware of the PSC's detailed

narrative of its administrative process, which might ultimately tend to support a finding that the PSC's rules do not actually require a utility to pay more than $0 for QF capacity when the utility has excess capacity.  [*See* R. 22 at 13.]  But the PSC's supplementation to the factual predicate on which this case is based is more appropriate to consider at the summary judgment stage.

The Court believes that the facts, as alleged in East Kentucky Power's complaint, tend to support a conclusion that East Kentucky Power's claims take issue with the PSC's implementation of the Act.  *Exelon Wind 1* reinforces the Court's position.  As already explained above, *Exelon Wind 1* attempted to elucidate the difference between as-applied and implementation challenges.  When turning Exelon's (the plaintiff) claims, the Fifth Circuit honed in on Exelon's requests for relief.  The court sorted Exelon's claims into two main categories: those which focused on a specific *order* by a state agency and those focused on the state agency's *rule*.  *See Exelon Wind 1*, 766 F.3d at 390-93.  Ultimately, the Fifth Circuit found that Exelon's requests for relief related to specific order and adjudications were as-applied challenges, whereas Exelon's category of claims challenging a specific rule were implementation challenges.  *See id*. at 390-94.

Finding the Fifth Circuit's framework particularly informative, the Court concludes that it has jurisdiction over East Kentucky Power's claims to the extent that they challenge the PSC's regulatory scheme.  Upon review of East Kentucky Power's prayer for relief in the Second Amended Complaint, it appears that one of East Kentucky Power's requests is that the Court require the PSC to modify its regulations.  Thus, to the extent that East Kentucky Power is challenging Title 807, Chapter 5 of Kentucky's Administrative Regulations, its action may

proceed.[2]  But to the extent that East Kentucky Power's claims challenge the PSC's orders, or to the extent that they require a specific determination of when or if a utility has excess capacity in the first place, or what type of capacity is required, jurisdiction is wanting.[3]

<b>B</b>

Having determined that it has jurisdiction over at least a portion of East Kentucky Power's action, the Court must now decide whether to exercise jurisdiction.  The PSC suggests that the Court should decline to exercise its jurisdiction pursuant to the *Burford* Doctrine.  [R. 22 at 20.]  Under *Burford*, where "timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989).

Essentially, "*Burford* abstention requires a federal court to abstain from jurisdiction where to assume jurisdiction would 'be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'"  *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 423 (6th Cir. 2007) (quoting *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 814 (1976)).  *Burford* does not, however, "require abstention

---

[2] The relief request in Paragraph Four of East Kentucky Power's prayer for relief appears to satisfy this Court's jurisdictional requirements.  [R. 19 at 16.]

[3] The PSC avers that Paragraphs One, Two, and Three of East Kentucky Power's prayer for relief require factual determinations specific to East Kentucky Power.  [R. 22 at 13.]

whenever there exists a [state] process, or even in all cases where there is a potential for conflict with state regulatory law or policy." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. at 362 (internal quotation omitted).  Indeed, "[t]his balance only rarely favors abstention, and the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Adrian Energy Assocs*., 481 F.3d at 423 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996)).  "Because *Burford* abstention is concerned with potential disruption of a state administrative scheme, rather than the mere existence of such a scheme, we must look behind the action to determine whether it implicates the concerns raised in *Burford*." *Id*. at 423-24.

The PSC urges the Court to abstain from exercising jurisdiction here.  Essentially, the PSC argues that abstention is warranted because resource adequacy is "of substantial public interest."  It claims that there exists a state question centering on resource adequacy, and that the dispute is about how East Kentucky Power will meet its capacity obligations  The PSC avers that the calculation of avoided capacity costs is an issue squarely within the PSC's jurisdiction, and that it is up to the PSC to determine how a utility will meet its capacity obligations when the time comes to acquire capacity to meet a capacity shortfall.  Thus, should the Court exercise jurisdiction and ultimately grant East Kentucky Power's requested relief, the PSC's own determinations would be upended.

East Kentucky Power admits that the outcome of this case may have an impact on the PSC's proceedings regarding East Kentucky Power's tariff, which would appear to include the PSC's final order on East Kentucky Power's most recent Qualified Facility case.  [R. 23 at 14; *see also* R. 24-1.]  That is, "if revisions to the Kentucky PSC's rules and orders are required so

that they conform to federal law."  [R. 23 at 14.]  But East Kentucky Power argues, citing *Adrian Energy Assocs.,* that such an outcome does not raise "difficult questions of state law" or disrupt "state efforts to establish a coherent policy."  *Id*. at 15.  East Kentucky Power maintains that this case turns on interpretation of *federal* law and is, therefore, squarely within this Court's province.  *Id*. (emphasis added).

The Court finds that *Burford* abstention is not warranted in this case.  The crux of this case is about the PSC's compliance with the Act.  So, while the Court's final disposition might ultimately impact Kentucky law and the PSC's administrative disposition related to East Kentucky Power's proposed tariff schedule, the essential enquiry is one of federal law, not state law.  *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. at 363 ("there is . . . no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." (quoting *Zablocki v. Redhail*, 434 U.S. 374, 380, n. 5 (1978)).

In its reply, the PSC draws comparisons to *Adrian Energy Assocs.*, where the Sixth Circuit applied *Burford* in the context of a the Act challenge.  [R. 24 at 8.]  In *Adrian Energy Assocs.*, the Sixth Circuit applied *Burford* because it found that "Federal court intervention … would interfere with the Michigan Public Service Commission's efforts to ensure that utility customers are charged appropriate and accurate rates pursuant to the power purchase agreements entered into between qualifying facilities and the utilities, which were previously approved by the Michigan Public Service Commission."  481 F.3d at 424.  The Sixth Circuit reiterated the importance of comity between the federal system and the state, stating that "federal review at this juncture would be disruptive of Michigan's efforts to establish a coherent policy with respect to regulation of qualifying facilities …."  *Id*.

12

Unlike in *Adrian Energy Assocs.*, exercising jurisdiction here would not be disruptive to the Commonwealth's efforts to establish a coherent regulatory scheme.  Instead, the Court's scope of review would be to ensure that the PSC's administrative rules adhere to federal law. The federal forum is more appropriate for such a matter because, as the Court has already determined, East Kentucky Power's action is about implementation.  The Act itself prescribes the federal forum as the appropriate place to seek such relief.  *See* 16 U.S. Code § 824a–3(h)(2)(B).  For all of these reasons, this is not one of the "exceptional circumstances" requiring the Court to abstain from exercising its jurisdiction.  *See Adrian Energy Associates*, 481 F.3d at 421.

### III

The Defendants do not want to litigate this case in federal court.  But one of East Kentucky Power's prayers for relief constitutes an implementation challenge.  Thus, East Kentucky Power is entitled to bring suit in the federal forum.  And because abstention is unwarranted, the suit will stay in the federal forum.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Defendants Third Motion to Dismiss [**R. 22**] is **DENIED**.

This the 29th day of August 2024.

Gregory F. Van Tatenhove
United States District Judge